UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

Frank PERRELLI, Plaintiff,  :

v.                          :    No. 3:02cv531 (JBA)

John BURKE, Defendant.      :

**Ruling on Defendant's Motion for Summary Judgment [Doc. #14]**

Plaintiff Frank Perrelli brings this suit under 42 U.S.C. § 1983 against New Haven police officer John Burke in his individual capacity only, alleging unreasonable seizure under the Fourth Amendment of the United States Constitution and intentional infliction of emotional distress under Connecticut common law arising from his arrest on June 19, 2001, for falsely reporting an incident in violation of Conn. Gen. Stat. § 53a-180 (2001).[1] Because the undisputed factual record demonstrates that Burke had probable cause for the arrest, his motion for summary judgment pursuant to Fed. R. Civ. P. 56 [Doc. #14] is GRANTED.

**I. Factual Background**

It is undisputed that, on June 19, 2001, Perrelli entered the Sunoco Service Station located at 350 Foxon Boulevard in New Haven, Connecticut, (the "Sunoco Station"), where he had been a

---

[1] Effective January 1, 2002, Conn. Gen. Stat. § 53a-180 was amended and the portion of the statute applicable to Perrelli on the date of his arrest codified with slight modification as Conn. Gen. Stat. § 53a-180c. This opinion will cite to Conn. Gen. Stat. § 53a-180 (2001) as it was the statute under which Perrelli was arrested.

1

frequent customer, and repeatedly claimed to the manager, Peter Serenesics, that $6,000 had been charged to his credit card account at the Sunoco Station.[2]  Serenesics told Perrelli that he should contact his credit card company about the matter.

Subsequently, at 10:44am, Perrelli called the New Haven Department of Police Service Dispatcher, complaining that a half hour earlier, he "just got ripped off" when $6,000 was charged to his Capital One credit card at the Sunoco Station, that the fraud department of Capital One had telephoned him to inform him that the Sunoco Station had "burned" him for $6,000, that he wanted an arrest made for fraud, and that he wanted a policeman to come and make a report.  See Def.'s Mot. for Summ. J. [Doc. #14] Ex. B.

In response, Burke was dispatched to the Sunoco Station where he met with Perrelli who informed him that he had purchased two packs of cigarettes at the station and had charged the purchase on his Capital One credit card.  Perrelli also told Burke that, approximately one half hour after buying the cigarettes, he received a telephone call from Capital One seeking to verify that he was the person who had charged $6,000 on his credit card at the Sunoco Station and thus to insure Perrelli's credit card had not been stolen.  Burke asked Perrelli if he had

---

[2] Perrelli's affidavit in opposition to Burke's motion does not explain what prompted Perrelli's action, only that he received a phone call from Capital One on June 19, 2001 warning him that a $6,000 charge had been made to his account from a Sunoco station in New Haven, Connecticut.  The affidavit does not specify whether this call occurred before or after Perrelli made the complaint at the Sunoco Station.

2

a receipt for the cigarettes, and Perrelli responded that he had lost it. Burke then entered the Sunoco Station and spoke with Serenesics, who informed Burke that Perrelli had purchased earlier that day two packs of cigarettes with a credit card and had been charged $6.90. Serenesics then showed Burke a register receipt revealing Perrelli had been charged $6.90 for the cigarettes, and informed Burke that there had been no charge for $6,000 to Perrelli's credit card that day.

Burke left the Sunoco Station and informed Perrelli what Serenesics had told him. Perrelli, however, still insisted that he was owed $6,000. Officer Burke then asked Perrelli for permission to telephone Capital One for its version, warning Perrelli that, if the result of the call showed he was not being truthful, he would have to arrest him for false reporting. Perrelli assented to the call and adamantly maintained that he was owed $6,000.

Burke spoke with a Capital One employee self identified as "John, ID #7890," who told Burke that, on that day, a charge for $6.90 was made to Perelli's Capital One credit card at the Sunoco Station, that this card had also been used that day to obtain a $2,500 cash advance from an ATM but that the transaction was refused as exceeding Perrelli's credit limit, and that after this failed attempt, Capital One contacted Perrelli to verify that it was Perrelli who had attempted the withdrawal. "John" further

3

told Burke that no one from Capital One had contacted Perrelli about a $6,000 charge on June 19, 2001, and there was no record of a $6,000 charge having been made to his card that day.[3] When Burke informed Perrelli of what Capital One had said, Perrelli said he had "f----d up." Def.'s Mot. for Sum. J. [Doc. #14] Ex. C ¶. 14. Burke then arrested Perrelli for falsely reporting an incident. The charge was nolled on October 26, 2001.

On July 10, 2001, Perrelli received a letter from Capital One, which reads in pertinent part,

> This letter is to confirm our telephone conversation on July 9, 2001.
>
> You explained that you were contacted by Capital One's Fraud Department who advised you that a charge of approximately $6,000.00 was authorized, at a gas station, on your account.
>
> First and foremost, we apologize for the inconvenience this matter has caused. It is normal procedure for an authorization that does not conform to a customer's usual charging pattern to be flagged by our Fraud Department. A call is then placed to the customer to verify that the transaction was authorized by the cardholder. This is a precautionary measure we have in place to ensure the security of Capital One customers. Our records do confirm that this type of precautionary call was placed to you on June 30, 2001.

---

[3] While Perrelli's local rule 9(c)(2) Statement (renumbered D. Conn. L. Civ. R. 56(a)(2)) states disagreement with Burke's account of what Capital One told Burke, he points to no evidence in the record disputing it and does not deny it in his own affidavit or excerpted deposition testimony. See Pl.'s 9(c)(2) Statement [Doc. #17] ¶ 13. To the contrary, Perrelli appears in his deposition to admit that the telephone call he received from Capital One on June 19, 2001, did not relate to a transaction involving cigarettes at the Sunoco Station but rather to a bank transaction on the same day, thereby providing corroboration for what Burke claims Capital One told him. See Def.'s Mot. for Summ. J. [Doc. #14] Ex. F 22:10-23:16. Perrelli's argument that his deposition testimony is unclear as to the date on which Capital One telephoned him regarding the bank transaction, see Pl.'s 9(c)(2) Statement [Doc. #17] ¶ 14, is belied by the transcript of the deposition, see Def.'s Mot. for Summ. J. [Doc. #14] at 22:10-22, 23:8-24:10.

4

> Regrettably, we are unable to confirm the details of any conversation with members of law enforcement.

Pl.'s 9(c)(2) Statement [Doc. #17] Ex. 1, Attach. AA.

## II. Summary Judgment Standard

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

Where, as here, the non-moving party bears the burden of proof at trial, the party moving for summary judgment may satisfy its initial burden of production by demonstrating the absence of a genuine issue of material fact on an essential element of the non-moving party's claim. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). Once that burden is met, the non-moving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting Fed. R. Civ. P. 56(c) and (e)).

"A District Court must resolve any factual issues of controversy in favor of the non-moving party," Lujan v. Nat'l

Wildlife Fed'n, 497 U.S. 871, 888 (1990), mindful that "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). The district court's ultimate concern is to ascertain "whether there is a need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250.

### III. False Arrest

A § 1983 federal civil rights claim for false arrest can not be maintained if the arresting officer acted with probable cause. See Singer v. Fulton County Sheriff, 63 F.3d 110, 118 (2d Cir. 1995); see also Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994). "'Probable cause to arrest exists when the authorities have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested.'" Boyd v. City of New York, 336 F.3d 72, 75-76 (2003)(quoting Golino v. City of New Haven, 950 F.2d 864, 870 (1991)).

Burke argues that the undisputed record demonstrates he had

6

probable cause to arrest Perrelli for falsely reporting an incident in violation of Conn. Gen. Stat. § 53a-180 (2001). The Court agrees.

> (a) A person is guilty of falsely reporting an incident when, knowing the information reported, conveyed or circulated to be false or baseless, he: ... (3) gratuitously reports to a law enforcement officer or agency (A) the alleged occurrence of an offense or incident which did not in fact occur, (B) an allegedly impending occurrence of an offense or incident which in fact is not about to occur, or (C) false information relating to an actual offense or incident or to the alleged implication of some person therein.
>
> (b) Falsely reporting an incident is a class A misdemeanor.

Conn. Gen. Stat. § 53a-180 (2001). The facts known to Burke would warrant a person of reasonable caution in believing Perrelli had falsely reported an incident of credit card fraud to police. Perrelli undisputedly reported to the New Haven police department and to Burke that he had been ripped off at the Sunoco Station in the amount of a credit overcharge of $6,000 and that his credit card company, Capital One, had telephoned him to warn him that such charge had been made. The fruits of Burke's investigation (including information obtained from Serenesics, seeing the receipt for the $6.90 charge for the cigarettes Perrelli purchased at the Sunoco Station, and the information relayed to Burke from Capital One) would indicate to a person of reasonable caution that no charge of $6,000 had been made to Perrelli's credit card that day, that no such charge could have been made as even $2,500 exceeded Perrelli's credit card limit,

7

and that Capital One had not telephoned Perrelli that day about a $6,000 charge. Thus, Burke had probable cause to believe Perrelli knew the information he had provided the New Haven police department and Burke was false or baseless (as either an alleged occurrence of an incident which did not in fact occur or false information relating to an actual incident) but that Perrelli gratuitously reported it anyway.

The July 10, 2001 letter Perrelli received from Capital One does not alter the probable cause analysis by casting doubt on Burke's account of what Capital One told him on June 19, 2001. First, it reflects only a precautionary call from Capital One to Perrelli on June 30, 2001 not June 19, 2001. Second, it does not specify the subject matter discussed with Perrelli on June 30, 2001, but simply identifies the June 30 call as a type of precautionary call routinely placed to customers to verify the customer's authorization for a charge not conforming to the customer's usual charging pattern. The letter does not endorse but merely records Perrelli's explanation that a $6,000 charge was the subject of the precautionary call. Third, the letter does not dispute Burke's account but merely informs Perrelli that Capital One could not confirm the details of any conversation with Burke or other members of law enforcement.

Perrelli argues the Court cannot find Burke had probable cause as a matter of law on the present record because Perrelli's

8

voluntary authorization of Burke's call to Capital One negates the statutory requirement that Perrelli knew the information he reported was false, and instead proves merely a "mix up." See Pl.'s Opp'n [Doc. #15] at 5-6. While this inference would be expected to be argued by the defense at the criminal trial on the charged offense, it does not change the probable cause analysis for summary judgment purposes, as a police officer is not required "to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent." Baker v. McCollan, 443 U.S. 137, 145-46 (1979); see also Ricciuti v. N.Y.C. Transit Authority, 124 F.3d 123, 128 (2d Cir. 1997)("The officer was not required to make a full investigation into plaintiff's state of mind prior to taking action. Once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest."). While Burke could not have ignored exculpatory circumstances demonstrating Perrelli lacked the requisite statutory intent,[4] Burke was not required to deduce from Perrelli's assent to the call to Capital One, which demonstrated the falsity of Perrelli's allegations, that Perrelli

---

[4] Perrelli's response that he messed up is ambiguous as to whether Perrelli was confessing after being confronted with the contents of Capital One's communications to Burke or was simply evincing current understanding that his previously confused mind had put Burke to unnecessary investigation. A reasonable officer could interpret it as the former.

9

was acting without such intent.[5]

## IV. Conclusion

For the foregoing reasons, Burke's motion for summary judgment [Doc. #14] is GRANTED. Inasmuch as Perrelli's false arrest claim was the only claim over which the Court had original jurisdiction, this Court declines, pursuant to 28 U.S.C. § 1367(c)(3), to exercise supplemental jurisdiction over plaintiff's remaining state common law emotional distress claim and it is dismissed without prejudice. The Clerk is directed to close this case.

IT IS SO ORDERED.

/s/ Janet Bond Arterton

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut, this 30th day of December, 2003.

---

[5] Similarly, plaintiff's suggestion that Burke's report of the incident indicates an improper underlying motivation for Perrelli's arrest, namely that Burke perceived Perrelli as irritating, see Def.'s Opp'n [Doc. #15] at 6, is not relevant to the probable cause analysis. See Singer, 63 F.3d at 119 ("The circumstances of this arrest raise questions as to the motivation of the arresting officer ...; but motivation is not a consideration in assessing probable cause.").

10